This is number 16, 3159, Tremaine Cowan. All right, Curtis for the appellate. Good morning. May it please the court, Claire Curtis on behalf of the Federal Public Defender representing Mr. Cowan today. I'd like to reserve three minutes for rebuttal. This court should reverse the district court's denial of Mr. Cowan's motion to suppress because his mere acquiescence to be searched was not sufficient to establish voluntary consent to be searched. Further, this court should consider race as one of the totality of circumstances that undermines Mr. Cowan's consent. Forced consent is the government's burden to prove as an evidentiary matter. The United States versus Mendenhall, and the totality of the circumstances must establish an unequivocal, specific and intelligently given consent that is uncontaminated by any duress or coercion. Here, if this court accepts the facts presented by the government through Officer Rogers, even assuming that Judge Gaunt at the district court level made factual determinations that were correct, adopting all of Judge Rogers' testimony as being a true reflection of what happened, the totality of the circumstances still do not reflect sufficient indicia of voluntary consent. In Bumper versus California, and then adopted by this court in United States versus Worley, mere acquiescence is not sufficient to establish consent. This court... Acquiescence to some show of authority, isn't it? Yes, Your Honor. As in Bumpers, they said falsely that we have a warrant. That one was sort of easy. In Worley, which I was on, the officer, at least he was sufficiently authoritative that the man has the classic, you've got the badge, I guess you can. And the question here is, what is there that would say that Judge Gaunt was wrong, that there had been that type of coercion or show of authority if you believe Officer Rogers, which the judge did? Thank you, Your Honor. And again, this court doesn't need to find that Judge Gaunt's factual determinations are wrong, but certainly the legal determinations of whether there are consents is a de novo consideration for this court's review. So even putting aside the legal conclusions that Judge Gaunt came to, certainly we... Is this question... Can you hear me? Is this question of consent one of law or fact? Thank you, Your Honor. Whether consent is given, certainly whether the totality of the circumstances establish consent is a factual question, but whether there is consent is a mixed question of fact and law. So whether the facts are sufficient to establish consent does have a legal dimension. What is sufficient to establish consent is partly a legal question. Okay. To return to Judge Boggs' question, since you were on the panel on Worley, of course that statement of, you have the gun, I guess you can, is a little bit more unequivocal in terms of establishing an acquiescence to authority. However, another great example is United States v. Jones, where this court again found there was a request for a search, there was a response that allowed for that search, but the Jones court determined this was just an expression of approval and submission to authority and not an unequivocal and specific allowance of a consent to search. And a few examples on the other side of that that helped to highlight this issue. So, for example, in United States v. Moon, this court found that there was voluntary consent because officers arrived at the defendant doctor's office and requested to search her files. She was able to ask what the nature of the complaint was against her and then directed them to where the files were kept and advised them she would continue to see patients while that search was conducted. In that case, this court said that the facts there unequivocally established consent. Similarly, in a case cited by the government, United States v. Chambers, which is an unreported case from this court, there was a request whether or not the officers could search the person, and the defendant said, go ahead. And this court said that the expression go ahead is an unequivocal expression of consent. Now, I'm sure that Mr. Katz is going to get up here and say, well, gestures can imply consent without a verbal need for consent. And I agree with that as a general principle of law. However, the facts of this individual case, again, even adopting Officer Roberts' testimony, which is that he asked Mr. Cowan to place his hands on the wall, and he did, is not sufficient. So what facts do you think make this case different? Thank you, Your Honor. Several things. We have a very close physical proximity between my client and the officer when he emerges from the bathroom. We have a very short span of time from when my client emerges from the bathroom to when he is immediately asked for his name, and then immediately upon answering that question, asked to place his hands on the wall. And then we also have the racial dimension, which, of course, this court has never addressed whether or not race should be a factor. We're asking the court to consider race today. Mr. Cowan is the only African American in a situation where both officers present are white, as well as the residents of the home. He is also the only person being searched. Now, again, I'm sure that Mr. Katz will get up here and say, well, he was the only person being searched because the residents of the home were known to the officers. However, the record also indicates that the home was a known drug house, which undercuts the officer's decision not to search either of those people. How was this put to the district judge during the argument? I know Mr. Cowan sort of raised it after the judge made the ruling, but was it argued, and in what way did he testify at the suppression and say, oh, I was scared because I'm black and he's white? No, Your Honor, Mr. Cowan did not testify at the suppression hearing. This was a one-sided evidentiary hearing with only Officer Rogers' testimony being presented. However, defense counsel did extensively question Officer Rogers about the racial dynamics in the home if there were other African Americans present, and he also pointed out that Mr. Cowan was the only African American present during this encounter in his motion to suppress, although he does not overtly make race a factor in his totality. In the argument, he's certainly implying that race is one factor that is creating an unequal, or at least affecting what Mr. Cowan— Doesn't that in a sense, though, go to the officer's credibility? It sounds as though it was put to the judge in terms of, well, you can't really believe the officer as to why he did what he did, among other things. And, Your Honor, it actually is irrelevant as a legal matter whether Officer Rogers intended to racially profile Mr. Cowan or not. Nothing in the record suggests that. But what this court has to consider is what a reasonable person might experience in Mr. Cowan's shoes. Here Mr. Cowan is. He's an out— That's without any testimony from his side. In other words, that whenever there is a disparate racial encounter, that prevents volunteering. No, Your Honor. That's not what you're saying, aren't you? No, Your Honor, not at all. Certainly Mr. Cowan does not suggest that any time there's an unevenness in the racial makeup of a police encounter, that that would ultimately undermine consent. That would be entirely too broad-based of a rule. Mr. Cowan is simply asserting that in his case, being the only African American, in addition to other factors which include the very short time frame in which he encountered this officer before being asked whether or not he could search, as well as the physical proximity and also— Let me ask you to put it this way. If I understand the proximity argument, if I understand the scene, he is the one that is in closest proximity. So whether he would be perfectly reasonable to ask him, and if he's voluntary at that point, how can the failure to search the white guy afterwards affect the consent? In other words, if the situation where the officer's walked in and says, hi, Bill, hi, Fred, hi, Sally, you up against the wall, and the last one is the only black man, that's one thing. Here, as I understand the situation, he is the one that's at least immediately confronting. He's coming out. The officer's never seen him before. And any lack of equality happens after the consent. Well, with some clarifications, I partly agree with that factual characterization. The officers walk into the home while Mr. Cowan is still in the bathroom. The record is clear about that. And they make contact with both of the homeowners or both of the residents. And it is true that when Mr. Cowan emerges from the bathroom, he is the person in closest physical proximity. There isn't the white gentleman in that same area? Yes. Because I thought the white gentleman was opening the door because Mr. Cowan was stuck in the bathroom. Yes, Your Honor, that's absolutely correct. Bradley McKenzie was also standing in that same space. And Officer Rogers is very unequivocal at the motion to suppress that although he did not know Mr. Cowan, that when he emerged from the bathroom, Mr. Cowan did nothing to make him think his personal safety was at issue. He did nothing to make the officer think that he was doing anything illegal, that he possessed contraband, or he in any other way was involved in any criminal activity or needed to be searched. And, in fact, the government, at the motion to suppress hearing, conceded that there was no reasonable suspicion to search Mr. Cowan. And if this were not a question of consent, this search would be invalid. That's something that the U.S. attorney conceded at the suppression hearing, making the only issue consent. Did the officer ask Mr. Cowan his name before he asked Mr. Cowan to stand against the wall? Yes, Your Honor. So the first thing that the officer does is establish that authority, what is your name, which Cowan responds to, and then immediately, would you please place your hands on the wall. Now, an analogy that I believe would assist this court is looking at some of the case law where this court has determined whether or not a defendant has felt free to leave. Because, again, we're looking at what a reasonable person would believe in terms of consent in their shoes under the totality of the circumstances. This court has previously recognized in several cases that overt intimidation is not required for a defendant to not feel free to leave and that it can be inferred from other circumstances and other things that an officer might say to establish their authority. And, in fact, in United States v. Richardson, this court construed the incredibly friendly statement, just hang out there for me, okay, as being enough of an exercise of authority that a defendant would not feel free to leave. And we would judge the issue of whether Mr. Cowan felt free to leave using what standard? An objective, reasonable person in the shoes of Mr. Cowan, is that the standard? Yes, Your Honor. Based under Mendenhall, it would be a reasonable person standard, yes. A question that I had, after the money is discovered in one pocket and the gun is discovered in another pocket, why would the police officers have the authority to handcuff Mr. Cowan under Ohio law, given that people under the Second Amendment can carry guns? That's an interesting question, Your Honor. There's been some conversation in defense circles about challenges to that. I apologize, I don't have the Supreme Court case loaded because we didn't raise that particular issue, but I do believe that the Supreme Court has said that there is some authority for officers to make an initial detainment of someone who has a gun to make sure that gun is lawfully possessed. Certainly, if that's a question that the court has, I would be happy to provide the court with supplemental briefing to flesh that issue out. But as I read it, you really did not challenge what happened after the fact that they handcuffed him, took him to the cruiser. That part of it wasn't challenged. Correct, Your Honor. The sole issue in this case is consent. And not to put too fine a point on it, but if we're looking at factors that undermine consent, someone who knows that their person possesses contraband wouldn't have a reason to want to voluntarily consent. That one's argued in a lot of cases and usually doesn't succeed. Thank you. You'll have your three minutes for rebuttal. Thank you, Your Honor. May it please the Court. Counsel, my name is Jason Katz and I represent the appellee on this case, the United States of America. Judges, the district court did not commit clear error when it denied Mr. Cowan's suppression motion, finding that Mr. Cowan had freely and voluntarily consented to the pat-down search. The evidence presented at trial showed that Officer Rogers had asked Mr. Cowan if he would move to the side right after Mr. Cowan had emerged from the bathroom and was in close proximity to Mr. Rogers, if he could move to the side so he could be patted down for officer safety. Mr. Cowan did so, moved to the side, and voluntarily, without being told what it was, assumed a position of his hands against the wall. Pat-down of Mr. Cowan showed that a gun was on his person. He was subsequently charged in the district court. Let me ask, can you hear me? I was going to ask you a question. Did Mr. Cowan live in this residence or was he just a passer-through? Or do we know? Judge, he did not live in this residence. The two people who lived in that residence were the person who gave consent and the other person who was opening the bathroom door. Trial testimony showed that Mr. Cowan was actually from Cleveland. This took place in Columbiana County, which is about an hour 45, two hours from there. In order to demonstrate no consent, what would Mr. Cowan have had to do? Would he have had to say no when he was asked to step aside and put his hands against the wall? No would obviously be the most direct and express way that he could have done that. He could have asked questions about why. He could have said, no, I'm not moving over. He could have stood there in defiance. There were many steps that Mr. Cowan could have done to not show consent. He could have walked right out of the bathroom or right past the wall where he eventually put his hands on, right out of the building. He didn't even make an effort to try and leave the situation. Could he have left the building in the sense of physically the officer was not blocking the way? He could have left the building in terms of the officer was not blocking the way. He emerged from the bathroom and asked him to move to the side. By that pure definition, the side was open by which he could move to because Officer Rogers was directly in front of him. And also Judge Gahn, the district court judge, actually cited preliminary hearing testimony transcript during her ruling on the motion to suppress. This is at document 29, page ID 217. Mr. Rogers had testified during the prelim. I didn't want to be backed up, you know, up against the steps, so I asked him to move over and I asked him if I could pat him down for my safety. And then during the grand jury testimony, which is also at page 217 of doc 29, I asked him if he could move over to the side of the dining room area so I could pat him down for weapons for our safety. He went ahead and put his hands up against the wall and I patted the left side of his hands. I noticed on that page 217 that you're referring to that the district judge referred to four different versions of what Officer Rogers said he said to Mr. Callan. Are those four items in the record? I was having trouble actually finding them, so I'm curious. There's a police report dated February 22nd, a preliminary hearing testimony of March 2nd, another thing in March, the grand jury testimony, and a police report of March 16th. Judge, they were admitted as exhibits in the state court. Whether or not they are part of the appellate record, Judge, I don't know. All I know is that the relevant portions that I think are most applicable here were actually quoted by Judge Gahn. So I think they're part of the record in terms of that, Your Honor. But they were offered to the district court judge in the lower court. The first one, the police report of February 22nd, states that Officer Rogers had Dion Johnson place his hands on the wall, and that seems different than asked. It does, Judge, but as I argued in front of the district court judge and as Judge Gahn concluded, it was a matter of semantics. He was asking to do it and he did it, so I had him do it. I asked my kid to take out the garbage. He took out the garbage. I had him do it. Well, had is a much more authoritative do it kind of thing than asked. If you ask your child to do something, they might say no, and you might then say yes. That's true, Your Honor, and I agree. Had is a stronger term than would ask be, but I think, Judge, if you look at how often Officer Rogers testified in this matter, the manners in which he testified, the reports that were written, he consistently, but for that one instance, was directing, I asked, I asked, I asked, and that seemed unequivocal but for the one time. So I think that one part where he said had was just a matter of semantics, that it was a poorly worded choice of a report, but I think what actually happened and what Judge Gahn found to be credible testimony was that he had asked him to move to the side, Judge. With respect to the February 22nd, is it just that in that one he's speaking of himself in the third person, you know, this is what Bob Dole said, he says, Officer Rogers had, is this his own language rather than something he transmitted to somebody else, or is that just the way he writes reports? Judge, my recollection is that that is how Mr. Rogers writes reports, is that he was referring to himself in the third person. That Mr. Rail had written reports, but Mr. Officer Rail was not present during this particular encounter, so Officer Rail would not have been in a position to write that report, it would have been Officer Rogers. Okay, the guy with the butter knife, Jimmy in the lock, were the other inhabitants of the home around when he was there, so there was some reason the officers would think he was okay, or wouldn't they have thought that was kind of suspicious? I'm sorry, Judge, I guess, so the lady who answered the door and let them in, she was in the area, there was only three people who were actually there, Mr. Cowan was with four people, there was Mr. Cowan behind the door, the Officer Rogers, Mr. McKenzie who was jimmying the door, and Ms. Cavanaugh who was the person who gave consent to enter the house. What I mean is, were Ms. Cavanaugh and McKenzie in such circumstance that if he had been an intruder, she would have been alarmed? You mean Mr. Cowan? No, Mr. McKenzie. In other words, the officer comes in, part of this argument is why didn't they rouse McKenzie? I was just asking as a factual matter, would it have been plausible to assume that Cavanaugh knew that McKenzie was there? Yes, so Cavanaugh and McKenzie were boyfriend, girlfriend, or cohabitants of the house, so he testified that he knew both of them, knew them both to be non-threats to him, he had dealt with them before. So he knew McKenzie before? Yes, and he knew him to be a non-violent, non-threatening person. But McKenzie is the one who has the knife, and it is a butter knife, which I assume is a rounded knife as opposed to… Yeah, it wasn't like a Rambo type knife, no. It was a simple butter knife that he was using, as I think most people would to try and jimmy open a door that may have become locked. But McKenzie, was McKenzie equally close to Officer Rogers? At that exact moment? Well, during the course of time. During the course of time, equally close? I don't know the exact, but I think they were similarly close, Judge. I think that would be clear from the record, is that they were in this two feet of area, the stairs were immediately behind them because he was backed up against the stairs, and Mr. McKenzie was trying to rouse the door open. So they were similarly close. So the only reason, then, why the officer didn't ask McKenzie to go against the wall and be searched for weapons is that the officer trusted McKenzie based on prior contact. They'd never had an issue with Mr. McKenzie before in his prior dealings, all not meeting him at the grocery store. So why would the officer search Cowan when McKenzie was helping Cowan get out of the bathroom? Because, as I believe Officer Rogers testified, he did not know him. He was the unknown in the room. But if McKenzie is trusted and it's McKenzie's friend, McKenzie's helping him get out of the bathroom. If McKenzie had any thought of any danger, McKenzie would have told the officer who's right there, hey, there's a bad guy in the bathroom, and McKenzie wouldn't have even been trying to get him out. McKenzie would have called the police if this is a bad guy. It seems so improbable as to why there has to be an immediate search of Cowan given that McKenzie is right there and isn't complaining about Cowan. Because, Judge, I think you have to understand the dynamics of this house. This is a house in Columbiana County where drug dealers come down from Cleveland to sell their wares. Well, then McKenzie shouldn't be trustworthy. He is a co-owner of the house? I don't know if he's a co-owner or he's a co-habitant. He's a co-habitant of the house, and it's a known drug house. So this guy is living in a known drug house and he's considered trustworthy? I think, Judge, you have to draw a distinction between drug users and drug dealers. So McKenzie is possibly a drug dealer because he's living in the house where drug people come. There is no evidence that Mr. McKenzie sells drugs. People come down to sell drugs to Mr. McKenzie, and people come to the house to buy drugs off of the people who come down. McKenzie is facilitating by letting drug people come into the house. McKenzie is facilitating the drug trade. This is true, Judge. He is letting the drug trade take place in his house, but he is a drug user. He is someone who relies upon the drugs. He is not someone who is protecting the drugs or selling the drugs. People who usually sell drugs are the ones who have guns. People who use drugs are the people trying to find money to buy the drugs. They're not usually the violent folk. They're usually the drug dealers. Judge, to talk about a few issues that I want to make sure are clear before the court, before my time runs out, I believe as Judge Boggs was illuminating, there's nothing here that suggests that there was any type of lawful claim of authority here, that Officer Rogers did anything that suggests that Mr. Cowan was coerced or suggests in any way that he has to consent or should consent. In Worley, there was a statement by the defendant during the search, hey, you've got the badge. Obviously, that would call into question whether or not the person was consenting. There's nothing in the record that shows that Mr. Cowan did or said anything at the time that questioned the authority. In fact, he did exactly what was part of the question. If you want to consent, move to the side. He moved to the side. He did exactly what was asked. If anything, it mitigates towards the fact that he was not acquiescing but was in fact consenting. Suppose that Cowan said as he moves to the side and puts his hands against the wall, I am doing this under objection. Would that show it's not a voluntary consent? I don't know if it would definitively show, but it would certainly show evidence that would help Mr. Cowan in his suppression motion. If he said, you've got the badge, I guess I'll do it, that would be pretty clear, wouldn't it? Yes. That would be enough under our case law, right? You've got the badge definitely would fall within the parameters of Worley. There was nothing said in this instance that would echo or mirror that. In terms of trying to figure out for somebody in the future what they should do in the situation of Mr. Cowan, you've said one idea is to walk past the police officer. Right. One idea is to say why. Another idea is to say, you've got the badge. I'll do it under your show of authority. So there are phrases that are sort of magic phrases. I don't know if there's a litany of things you can do to show that you're consenting based upon a show of authority or that you don't want to consent or you're refusing to consent. I mean obviously Mr. Cowan could have said and done a litany of things, all that shows that, hey, I'm doing this but only because you're telling me to do this. Nothing like that was said. And, in fact, as Judge Boggs noted in Bumper, there wasn't a claim of I have a search warrant for you. There wasn't a claim of I have an arrest warrant for you. There was nothing that said that, all right, well, since you've got the paper, back it up. I'm going to do it anyway. There's nothing here that indicates that was the case. In fact, in United States v. Chambers, this court wrote, that Chambers placed his hands on Trooper's vehicle does not demonstrate that he was merely acquiescing to Trooper's lawful authority. Rather, as the district court concluded, it could be viewed as further evidence of consent. That's exactly what the fact scenario in Chambers is almost akin to the fact scenario here, where Mr. Chambers, after giving consent, saying go ahead, without being prompted, Chambers turned around, put his hands on the Trooper's vehicle and assumed the position associated with pat-downs. Very similar here. In Chambers there was the go ahead statement, right? Yeah, so the consent, but the consent with something. Here we just have the consent. There is nothing to point to that says it was acquiescence. You're calling it we have the consent, but that's the issue for the court to decide. As opposed to I consent, which would be more appropriate for you to say we have the consent. Here we have the act. The act, I believe, that shows and this court has recognized that you can look to actions that shows the consent. I'm not debating that, but I think you are using the ultimate determination word here when there was no actual word consent, and what we are trying to decide is was there in fact consent. Yes, Judge. I think the same actions that demonstrate consent, as this court noted, don't show acquiescence. They show consent, as Chambers held. Judge, I also wanted to point out, and I only have a minute remaining, so I'll try to be as quick as possible. Mr. Cowen cites in his brief three cases that, quote, recognize that even police interactions can undermine voluntary consent. Richardson, he cites Buchanan and Smith. I implore the court and ask the court to read those three cases. All three of those cases are seizure cases, which are obviously not search cases and obviously not consent to search cases. As seizure cases, they employ the reasonable person standard, which, as this court has recognized in United States v. Lee, is a mixed question of law and fact, that being whether or not there is a seizure and whether or not a reasonable person would do it. Reasonable person being the legal question. As United States v. Lee recognized, this is a purely factual inquiry, and that's why the clear error standard is what this court must use. And therefore, because it's a clear error standard, all three of those cases, Richardson, Buchanan, Smith, they're all in opposite here. They have no bearing here to what is at issue here. A Fourth Amendment issue of search is not what was at play in Richardson, is not what was at play in Buchanan, and it was not at play in Smith. So therefore, I think when this court drafts its opinion, I ask the court to be careful in making sure that the authority that's drafted actually goes to the actual search issue and not the seizure issue, as Mr. Cowen suggests this court does. Thank you, counsel. If I could ask a question about the Second Amendment concern. So putting ourselves away from this case, just out of curiosity, if you have a person who is padded down and there is a discovery of a firearm, does that give the police under current law the power to detain the person, given whatever Ohio law may be about people who have passed some kind of scrutiny being able to carry firearms around? Let me preface all this, Judge, in that I am not a state court and I don't know. What I understand from talking to police officers when preparing for cases such as this is that they have a right to detain the person until they, as I believe my counsel indicated, they can make some type of verification that they have the proper authority to carry the gun, that the gun is in the proper condition. So once they find the gun, they can detain the person, make the requisite determinations as to whether or not this person is in fact someone who is eligible to carry the gun in the manner and method by which they are carrying the gun, and then they can proceed accordingly. Is this kind of analogous to asking for your driver's license? I mean, obviously it's not exactly the same because you're not required to have a gun permit. I believe, Judge, in Ohio, and once again, this is what I understand so I do not know, I believe when you have a gun, you're required to carry the permit on you. So if you have the permit... If there's a law in Ohio, then that would help. Presumably something analogous would be, is this your gun, are you a felon? Yes. So is there a case or anything that you would point us to that would say what the authority is for a police officer upon discovering a gun? Not something that you know off the top of your head. Under state law, Judge, as I believe counsel indicated, I don't believe this was raised, I am not prepared to cite cases or authority to speak on the matter other than what I know of, what I don't know, what I understand. Thank you. Is there no further questions? Thank you, Your Honors. You have three minutes for rebuttal. Thank you, Your Honor. Three brief points on rebuttal. To clarify any questions about the standard, this court held both in United States v. Moon and in United States v. Carruthers that the ultimate legal determination of whether or not there is consent is considered de novo. This court is not simply considering this court for clear error. That applies only to factual determinations, and this is a mixed question of fact and law. Secondly, it is not Mr. Cowen's burden to affirmatively reject a request to search. Rather, it is law enforcement's burden to establish that voluntary consent before searching. And the factors, in addition to what I've previously pointed out to this court, that support a totality undermining consent, are also that Mr. Cowen was not advised of his right to reject that request. Now, this court has said in Worley that that is not determinative, that's not a dispositive factor, but it is one factor along with the physical proximity and time. Additionally, as a factor, Officer Rogers testified that Mr. Cowen was not actually free to leave. Now, Mr. Katz points out in his briefing that his subjective intentions are not known to Mr. Cowen. However, Mr. Cowen's position is that that officer's mindset would feed and influence the way in which he interacts with others. And if he knows he's going to search Mr. Cowen, regardless of whether Mr. Cowen consents, that's going to impact the way that he speaks to Mr. Cowen, his body language, and other things that are going to communicate to Mr. Cowen that he's not in a position to reject that request. The only case in which this court has considered gestures only, unlike chambers where there was an unequivocal yes, go ahead, verbal consent, is United States v. Bowser, which the government relied on at the district court level. However, in Bowser, those gestures were much more unequivocal. In Bowser, the defendant led the officers to the back room of his apartment when they requested that search, and then continued to cooperate with them both during their search and afterwards at the precinct. And this court held that those gestures, even though there were no words that accompanied them, were sufficient to establish an unequivocal, specific, and intelligently given consent. Here, all we have is an officer's display of authority and Mr. Cowen's mere acquiescence by placing his hands on the wall in response to a request to do so. Is there a factual dispute as to what words were that Officer Rogers used? Yes, thank you, Judge Moore, that is my third point. There is a factual dispute here. Judge Gaughan determined that Officer Rogers' testimony was credible. However, Officer Rogers' first report, when the interaction is freshest in his mind, is that he had Mr. Cowen place his hands on the wall. This is not a semantic difference. Whether I have you place your hands on the wall or I ask you to place your hands on the wall, it's literally the difference between whether I seek your consent and whether I force you by a display of law enforcement authority. I see that I'm out of time. May I briefly conclude? That discrepancy is case determinative. Certainly, this court needs to consider that discrepancy and consider that Officer Rogers was in the best position during that first report to make an accurate description of what happened. There is a legally dispositive difference between those two reports, not to mention there's nothing in the record that suggests why Officer Rogers even completed a second report. With that, we would simply respectfully ask that this court reverse Mr. Cowen's conviction and the denial of his motion to suppress. Thank you.